UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DAVID FREDERICK RUEL and
DEBORA KAY RUEL,
    Debtors.                                                                  No. 7-08-10440 SA

**MEMORANDUM OPINION ON THE
UNITED STATES TRUSTEE'S
<u>MOTION TO DISMISS OR CONVERT FOR ABUSE</u>**

This matter came before the Court for trial on the merits of the United States Trustee's ("UST") Motion to Dismiss or Convert Pursuant to 11 U.S.C. § 707(b)(3), (doc 18) and the Debtors' Objection thereto, (doc 21). The Court took the matter under advisement. Upon review of the evidence presented at trial and the arguments of the parties, the Court finds that the Motion to Dismiss or Convert should be granted. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

**<u>DISCUSSION</u>**

The UST's Motion is based on 11 U.S.C. § 707(b), which provides in part:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. ...
> ...
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in

subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider-

	(A) whether the debtor filed the petition in bad faith[1]; or
	(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Section 707(b)(3) was enacted as part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), and allows for dismissal of a debtor's Chapter 7 case where the debts are primarily consumer debts if the court finds "abuse." 11 U.S.C. § 707(b)(3). This standard replaced the pre-BAPCPA version of this statute which required the court to find "substantial abuse." See In re Stewart, 175 F.3d 796, 808 (10th Cir. 1999). In the Tenth Circuit, the courts used a "totality of the circumstances" analysis to determine if there was substantial abuse. Id. at 809.

Post-BAPCPA section 707 incorporates the "totality of the circumstances" language in subsection (b)(3)(B). "Thus, pre-BAPCPA cases which consider whether a case should be dismissed for substantial abuse remain instructive in an analysis under § 707(b)(3)." In re Mondragon, 2007 WL 2461616 (Bankr. D. N.M. 2007)(footnote omitted.)

---

[1] In closing argument, the UST stated that it was not arguing bad faith in this case, only the totality of circumstances.

Page -2-

The following factors are relevant to a "totality of the circumstances" analysis for dismissal under the pre-BAPCPA "substantial abuse" standard: (1) the debtor's ability to repay his or her debts; (2) whether the debtor has a stable source of future income; (3) whether the debtor's expenses can be reduced without depriving the debtor of adequate food, clothing, shelter and other necessities; (4) whether the debtor has suffered a sudden illness or calamity; (5) whether the debtor has obtained cash advances and consumer purchases far in excess of the debtor's ability to repay; (6) whether the debtor has excessive expenses; (7) whether the debtor has provided accurate and complete information on his or her statements and schedules; and (8) whether the debtor has acted in good faith. Stewart, 175 F.3d at 809 (citing In re Krohn, 886 F.2d 123, 126-127 (6th Cir. 1989) and In re Green, 934 F.2d 568, 572-73 (4th Cir. 1991)). Ability to pay is the primary factor. Id. However, other relevant or contributing factors such as unique hardships have to be examined before dismissing a Chapter 7 case. Id. The analysis is made on a case-by-case basis. Id.

**FACTS**

1. Debtors filed for Chapter 7 relief on February 15, 2008.

2. The schedules showed $238,938 of secured debt, no priority debt, and nonpriority unsecured debt of $137,119. Debtors described the nature of their debts as consumer.

Page -3-

3.  Debtors' schedules and statements showed gross monthly income of $5,180 and current expenditures of $4,407. Adjusted gross income for 2007 was $70,624 and $52,885 for 2006. Debtors have a minor daughter that lives with them from May to October. Form 22 indicates that the presumption of abuse did not arise.

4.  The first meeting of creditors was held and concluded on March 24, 2008.

5.  Schedule J discloses monthly net income of $773, but the expenses listed include two $100 payments to unsecured creditors.

6.  Schedule I states that Mr. Ruel would be retiring in March, 2008 and that his income would decrease to $2,000 per month.

7.  Mr. Ruel retired and started working for Northrop Grumman in February, 2008 at an annual salary of $55,000.

8.  Mr. Ruel's monthly retirement pay from February through December, 2008 was $2,517.

9.  Mr. Ruel's gross monthly income from Northrop Grumman is $4,231.

10. Mr. Ruel's monthly retirement pay rose to $2,642 in January, 2009.

11. Mr. Ruel's gross monthly income from all sources from February, 2008 to December, 2008 was $6,748, and rose to $6,873 in January, 2009.

12. Mrs. Ruel was not employed when the petition was filed. She began working as a contractor delivering newspapers for USA Today in June, 2008.

13. Mrs. Ruel's gross monthly income before taxes from June, 2008 to December, 2008 was $899.

14. Debtors' monthly mortgage payment is $1,787.

15. Debtors purchased a 2009 Hyundai in December, 2008 for $22,360 with monthly payments of $485. They traded in a 1993 Mercury Sable and a 1996 Plymouth Neon in connection with the purchase.

16. Debtors' current monthly income is above the median income for a three person household in New Mexico.

17. Debtors earn more income after their Chapter 7 filing than they did before the filing.

18. UST Exhibit 17 is the UST's 707(b)(3) Analysis, which is basically three different Form 22's, one based on Schedules I and J, one based on the UST's computation using IRS Standards, and one based on post-petition changes. The first column shows monthly net income of $268 based on Schedules I and J. The third column shows the UST's computation with IRS Standards and monthly net income of $3,158. The final column, which the Court finds to be the most realistic, shows monthly net income of $2,177. The Exhibit further shows that a 60-month chapter 13 plan would pay a 95% dividend.

19. Mr. Ruel retired in early 2008 after 26 years of active military duty. Before coming to New Mexico the family had lived in the United Kingdom for eight years. The Ruel's financial problems began while they were living abroad, probably in 2000 or 2001. During that time they had problems staying current, could not catch up, and saw the interest rates on some credit cards go from 12% to 30%. Mr. Ruel estimated that 70% of their unsecured debt originated when they were in the United Kingdom.

20. Mr. Ruel has disk problems in his back and is in constant pain if he sits or stands. Doctors do not recommend surgery at this time, however, and Mr. Ruel is not currently under the care of a physician.

21. About two years ago the Ruels were still paying interest rates of 30% on their credit cards, and cut them up. They attempted to resolve their debts with individual creditors, but apparently they all wanted lump sum settlements which the Ruels could not pay. They went to consumer credit counseling and were told that they needed to pay $3,000 per month for 5 years to get out of debt, which they believed they could not afford.

22. UST's Exhibit 17 should be amended to take into consideration the new vehicle purchased after the bankruptcy which the UST did not learn about until trial and the change in

Case 08-10440-s7    Doc 37    Filed 10/14/09    Entered 10/14/09 13:30:05 Page 6 of 9

mortgage payment. These changes reduce monthly net income from $2,176 to $1,691, and the dividend to 73%.[2]

**CONCLUSIONS OF LAW**

1. Debtors' argue that they passed the means test and that should be the end of the inquiry. The Court disagrees. The means test is a mechanical computation that demonstrates either a presumption of abuse or no presumption of abuse under § 707(b)(2). The UST does not need to elect between § 707(b)(2) and § 707(b)(3), but can file under either or both sections. See also In re DePellegrini, 365 B.R. 830, 833 (Bankr. S.D. Ohio 2007)("The Debtor's contention that he 'passed' the means test of § 707(b)(2) is not a defense to a § 707(b)(3) motion to dismiss.")

2. Debtors have the ability to propose a Chapter 13 plan which can yield a significant percentage dividend for creditors.

3. Debtors' income is stable. There was no evidence offered that income will not remain stable or rise.

4. Debtors' expenses can be reduced. Their mortgage payment is much higher than the IRS guidelines for housing expense. They have two vehicles and a motorcycle; they could reduce expenses and bring in some income by selling a vehicle or the motorcycle (even taking into account Debtor's argument that using the motorcycle in good weather saves on fuel costs.) Therefore,

---

[2] $1,671 * 60 / $137,119 = .73

expenses could be reduced without depriving the Debtors of adequate food, clothing, shelter or other necessities.

5.  Debtors' financial problems are not the result of a sudden calamity or illness; rather, the testimony indicates that they have simply been living beyond their means for years.

6.  Some $100,000 of the unsecured debt consists of credit cards and term loans.

7.  The Court finds that the Debtors have acted in good faith.

8.  The Court finds, based on the totality of the circumstances, that this Chapter 7 case is an abuse and should be dismissed or converted to a Chapter 13 case. A separate Order will enter.

                                                  Honorable James S. Starzynski
                                                  United States Bankruptcy Judge

Date Entered on Docket: October 14, 2009

copies to:

Maria E. Owen
CANALES-OWEN & Associates
1909 Carlisle Blvd. NE
Ste A
Albuquerque, NM 87110

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

Alice Nystel Page
Office of the UST
PO Box 608
Albuquerque, NM 87103-0608

Linda S. Bloom
Trustee
PO Box 218
Albuquerque, NM 87103-0218

Case 08-10440-s7    Doc 37    Filed 10/14/09    Entered 10/14/09 13:30:05 Page 9 of 9